Thank you, and may it please the Court. Pat McPhail for the Plaintiff Appellant, Timothy Farkas. Counsel, would you raise that podium just a little bit? There you go. And speak a little more clearly into your mic. Yes, Your Honor. Thank you.  The District Court resolved a genuine issue of material fact and entered summary judgment against the Plaintiff. The Plaintiff's expert testified that the hydraulic press at issue was defective and unreasonably dangerous because it lacked two-hand control and a light curtain. That's in the addendum at pages 23 through 26. This machine involved both of those defects at the time of the sale. That's admitted by the defendant. And that's also in the addendum at 27 through 31. The machine was not designed to be safe for all intended uses, but instead relied on downstream users to fashion homemade guards in order to protect the user. The defendant argued that the end user of the product should have made a better homemade guard, and that caused the injury to the operator. The District Court resolved this factual dispute in favor of the defendant and entered summary judgment. And that's why it must be reversed. This machine is a tube informer. Essentially, what it is is a type of hydraulic power press. The operator takes a pipe called tubing, puts it into the press, and then activates a cycle by pressing a foot switch.  A foot switch, Your Honor. What? The press actually comes down with a clamp, clamps around the pipe, and then forms the end of the tube in any number of different ways. It could bend it. It could make a design on it. But basically, that's the general operation of the machine. Now, didn't your expert actually testify that a foot pedal would be an appropriate safety design if, in fact, it was properly guarded? In fact, what Mr. or Dr. Blundell testified to is that he could say a machine that could be safe with a homemade point-of-operation guard. And he was never asked to follow up on that. But if you Do you have to go to the homemade guard? Don't we look at the machine as it was originally designed and sold? And when it was designed and sold, it had a guard? If that's the case, Your Honor, then we should definitely not be here because it's undisputed that the guard of this machine had nothing to do with the configuration that we're here talking about today that hurt my client. So that's the key issue that I think was confusing for the district court. This is a machine that works and is sold by addition to work on sizes of tubing from 1 inch all the way up to 2.75 inches. Every time the tubing changes, this homemade guarding would have to change too. And so the defendant's argument that they sold it with one point-of-operation guard for one size is an entire red herring because the size that was in use at the time was not that size. They admit as soon as the tooling changes Did the original documentation with the machine encourage or somehow give instructions on the use of various sizes? Actually, what the original machine says is that it can work on anything from 1 to 2.75. What the defendant is arguing is that well, ANSI says that the downstream user has to make point-of-operation guards. Well, that's wrong for two reasons. First of all, it doesn't comply with the law. The Murphy case that's cited in the briefing makes clear that ANSI and OSHA standards as far as who is supposed to guard are irrelevant to the determination of whether or not the machine is unreasonably dangerous. But more to your point, Your Honor, the instructions say nothing about how to make the point-of-operation guards. They leave that entirely up to the user. But the real key point here is if we really want to get into the issue, our expert says there's two defects in this machine. No two-hand control and no light curtain. Say those two again. Two-hand control and light curtain. So basically what our expert is saying is that this machine should have been designed, instead of having this foot pedal and relying on the homemade guards, to just have a two-hand control for the operation. What that means is the operator puts a pipe into the machine, takes his hands away, and has to press two buttons away from the point of operation to make sure that it works. Whenever it works, the operator's hands are automatically away from the point of operation. That design is admitted to be feasible, and in fact, the defendant sold that as an option with this machine, but didn't give it to a person who purchased this. So we know that that's a different design that could have been used but wasn't. It's admitted that that was not present at the time of the sale, and that really ends the inquiry. Now this idea about the... Does the user have any obligation to have understood all of this thing before they bought it or bought it and put it in? I want to make sure I understand your question, Judge. Are you meaning the user, the actual employee who was putting the pipe in, or the user, meaning the employer, who purchased it? No, probably the person that owned the machine and hired an employee to do it, even. Okay. Your Honor, the employer is not a defendant in this case. There's not a party to the case. So the employer's obligations are irrelevant to the issue here at issue. But more to the point, the Murphy case that's cited in the brief, that's what I keep going back to. The only obligation that has been identified by the defendant, basically what they're saying is this was safe. We don't have to guard it. Every time that the machine changes, we need to get, we just rely on the person who bought it, basically who you're saying... Murphy didn't have any guard at all, did he? What's that? The Murphy case. There was no guard involved at all, was there? That's true, but there's no, the key point is that there's no guard for the intended use. And so this is what I keep coming back to, Your Honor. I keep coming back to this... The intended use being pipes of different sizes, potentially. Is that your argument? That's, I mean, that's just what the facts of the case are, because what the addition admitted in its deposition is that this single guard, this red herring that I keep pulling up, that guard was admittedly inadequate and inappropriate to guard this machine as soon as the tubing size changed. And then addition's expert testified the use at the time of the accident was an intended foreseeable use. That seems to broaden tort law in some ways, certainly. I disagree, Your Honor, and this is why. I'll cite you to a case. The case that we're talking about here is Leonard cited in the briefing, which will say a product may have more than one reasonably anticipated use. And so that follows from the Missouri statute saying that the machine must be safe for all reasonably anticipated uses. And let me give you an analogy to make it clear. What the defendant is basically saying is that, well, we put a guard for one of the uses, and the rest of the uses we don't have to make it safe. That's like saying a car manufacturer selling a car in first gear doesn't have to make second, third, fourth, fifth, and sixth gear safe. The manufacturer isn't off the hook if third gear is unreasonably dangerous just because it sold it in first gear. You know, I get that. But I wonder about, this is a case where a machine is sold, it's been modified, if the record, I think my understanding is correct, it's been modified at least on three separate occasions. And how many, I mean, if you manufacture a machine, you place it in the stream of commerce, it's out there for decades, it gets modified three times, how reasonable is it that that manufacturer should be held responsible for those injuries? And do you have a case where this has ever happened and damages have actually been, award and liability has been found? Yes, Your Honor. We've cited three cases in the briefing. And this is the real issue. Practically speaking, this homemade guarding scheme by itself is the defect. What Dr. Blondell is saying is that all you have to do from the beginning is make this thing operate with two-hand control. And then you never have to worry about whenever the configuration changes, ever. Eleven witnesses testified that as long as this thing has two-hand control, it doesn't matter how good or bad the end user makes these homemade guards. There's no bright idea that a subsequent user would employ that would free the original seller from liability, is that what you're saying? This is just, we're not even saying that they should have come up with a new scheme. Addition admits that this thing could have been sold with two-hand control or a Likert. You could have gotten it but it's paid more, is that? Well, Your Honor, I haven't been cited to anything in the case law and I haven't seen anything in the briefing that says that a product has to be safe or not unreasonably dangerous only if the end user wants it to be. It doesn't matter. You cannot sell a product that's unreasonably dangerous regardless of who buys it. And I mean, that's just, there's not a duty on a purchaser to choose a safe option, right? Unreasonably dangerous, defective unreasonably dangerous is what we have to prove and that's what Dr. Blundell has testified to. Your Honors, I see I've gone into my yellow time. Well, back to the question that I don't think you answered. What's the best case for the proposition that you can place a product in the stream of commerce that trades for decades and has been modified on three or more occasions and that the product was originally dangerous and liability flows? Your Honor, I'll direct the court to Egelhoff. This has been cited in the brief. This is a Missouri Supreme Court case, 875 Southwest 2D, 543. What's the name of the case? Egelhoff, E-G-E-L-H-O-F-F. This is the swimming pool case. Who decided that case? I'm sorry, Your Honor? Who decided that case? This is the Missouri Supreme Court. What? Missouri Supreme Court, Your Honor. The defect alleged in that case was that originally this swimming pool was designed with posts that had caps to cover off these sharp edges. The plaintiff's expert testifies that the plaintiff testified that on some multiple occasions prior to the injury, these caps had somehow been cut, which also may have caused the injuries. The court in that case decided that this differing testimony, that question of fact, that goes to the jury to decide whether or not it was unreasonably dangerous at the beginning. And it actually says, I quote, but I think it was you, Your Honor. But here there's no question of may. Then here the question is, this was in a separate and different condition at the time of the injury, right? And that's also what the testimony is in Egelhoff. It's absolutely, the caps were off and exposed the plaintiff to injury. That was uncontested. And the court said the modification relied on by the defendant was separate and distinct from the defect relied on by the plaintiff. That is the exact case here, and that is exactly where the district court went wrong. Instead of asking whether Dr. Blundell's two-hand control or light curtain was unreasonably dangerous, which it was, and that was the testimony, it asked, well, what was the defective guard the reason for the injury? But that's not how you do it. The court in Egelhoff, the Missouri Supreme Court, says that is a separate and distinct defect relied on by the defendant, and the court must ignore that and must go for the plaintiff's evidence only. And that's what we're here for. This is just a resolution of fact by the court deciding that one side was right and the other side was wrong, and this is, that's why we're here. The jury decides those issues and not the judge. If I may, if I could reserve the remaining time for rebuttal. Thank you, Mr. McPhail. Thank you, Your Honor. Mr. Klotz. May it please the court. Could you raise the podium just a bit? There's a button on the side there under your right arm, on your right hand. Oh, podium. Sorry about that, Judge. May it please the court. Good morning, Your Honors. My name is Craig Klotz, and I represent the Apelli Edition Manufacturing Technologies. Mr. McPhail gave a pretty good account of the facts of this case, and it appears the court is well aware of the facts. Judge, you're going to have to speak up. I'm sorry. We don't hear that great. No, I apologize. It appears the court is well aware of the facts of the case, so I will jump right into my arguments. We're basically here for two reasons today. The district court affirmed addition's motion for summary judgment for two reasons. The first reason was plaintiff was unable to meet his burden to show that there was a defect in this machine at the time of the accident. The second is plaintiff was unable to show that any conduct by Apelli Edition was directly resulted in plaintiff's damages. In fact, is one of the experts testified that there was no defect in the machine at the time of the accident? Sure. I'd like to clarify that, Judge. What happened was plaintiff's expert, Dr. Blundell, prepared a report, and during the deposition, he was questioned about the report. I asked him during the deposition, a machine like this is a foot pedal. Does that make a machine like this inherently dangerous? The answer was no. So the next question was, okay, if you have a machine such as this, without a light curtain and without a two-hand control, just like we have here, is that automatically dangerous and defective? And the answer was no, so long as it's guarded. So the question right after that was, was this guarded when it was sold? Was this guard sufficient? Correct. Yes. Was the guard sufficient when it was sold? Appropriate, I think, is the word that was used. And the answer was, I don't know. I don't know what components were on the machine when it was sold. Now, the plaintiff's position is that it was the capabilities of the machine that allowed it to do things without that guard in place that is the defect. What's your response to that? Excuse me, Your Honor. My response, I have two responses. The first response is, Dr. Blundell, their expert, never testified that that was a defect. We're talking about a case where you need technical expertise to define a defect. This isn't a case where it's obvious and you can simply, for example, a car that stalls. This isn't a car that stalls case. This is a case that needs technical expertise. It's a hydraulic machine with hundreds of moving parts. So my first response to Your Honor is, Dr. Blundell never testified that the fact that this machine can utilize different sized tubing makes it automatically defective. Secondly, I don't even think he knew that, frankly. He didn't know what component parts were on the machine. I don't think he had that information. Second thing is, excuse me, Your Honor. So I understood when I was reading the brief that part of the argument was that the expert did not know what the guard looked like or how it was actually configured originally. That it was impossible to say how it would accommodate piping of various sizing at that point. And that, therefore, no one could really say what the, whether the condition was unreasonably dangerous or not at the time that it was placed in the stream of commerce. Is that what your argument is? That's correct. We never got into the different sizes of the tubing. The question was simply what guard was on there and was it appropriate? And the answer was, I don't know what guard was on there. I don't know what component parts were on this machine. At that point, if he didn't know, if he wasn't aware of what parts were on the machine, how could he say the machine was defective when it was sold? If he doesn't know what components and parts were on the machine when it was sold, how can he say it was sold? Getting back to Judge Smith's question, I have one other thing I would like to add to that. Yes, this machine can bend different sized tubing. However, the analogy used by Pointer's counsel is not apples and apples, Judge. It's not simply pressing a button. It's not simply pushing a knob. In order to change the size of the tube that you're bending, you have to completely retool the machine. That is a significant change and it's a complete modification of the machine. And that machine wasn't the machine that was sold, right? Well, technically, it was the machine that was sold. However, the size that was being In all details, it wasn't the machine that was sold. It had been material altered, is what I would argue, and it is absolutely Was it true when they said, because I couldn't remember this from reading the briefing or looking at the appendix, that this machine had to be completely retooled at the time of its original sale? Because that's their argument, was that it did not fit the tubing that was intended to be used at the very beginning, which meant that at that point, they had to change the guarding and the delivery system both to accommodate that new tubing on the date that it was placed in a new sale. In 1992, the machine was made for a specific customer. It was used to make tailpipes for Mustangs. In 1992, the world of manufacturing was different. Machines were used for years doing the same thing. Now, they're much more mobile. That's the reason now people use light curtains and use two-hand controls, because you are changing machines up much more often than you did in the past. But to the best of my knowledge, the machine was tooled and manufactured for one specific user. I can't recall the name at this point, but it was for one specific user. We don't know the whole history. We know it was sold at some point in 2012 or 2013. When it was sold at that point, it was retooled for use with Bone and Dawson, who's the employer. I would like to continue. What I would tell you, Judge, is that, yes, using different sizes of tubing is certainly something that is foreseeable. Under Missouri law, a manufacturer, though, is not liable, even if an alteration is foreseeable, if that alteration causes the machine to become unsafe. So the point being, the plaintiff cannot make, in my opinion, cannot say this machine was defective when it was sold because they don't know what components were on it. He is no expert to make that. Well, I think the argument is that it was foreseeable. Since the machine was capable of making different sizes, it was foreseeable that it would be modified to manufacture a different size. Okay. And I understand that argument. My response to that argument would be solely, though, that when the modification was made and the new tooling was put into the machine, they have an obligation at that point to put a guard that works. The guard that was on it before worked, and when they retooled the machine, they have an obligation to put a guard on it that works. And at that point, they put a guard on it that didn't work. And that's why the plaintiff was injured. Unless I missed something, and that's readily possible, the court didn't decide a negligent failure to warn case at that, dealing with that point in time, did it? Or at any other point in time? Judge, counsel's right. It's not specifically addressed in the ruling. There's no specific, the court did not specifically address the failure to warn in the ruling. What I would say, though, is that the findings of the court made that, number one, plaintiff did not meet his burden, showing that there was a defect at the time of sale. And number two, that the machine did not become unsafe until a third party altered the machine. Which was enough to reject a negligent failure to warn? Correct, under the elements of failure to warn, the original defect at the time of sale has to be the direct cause of the injury. What the court found was, plaintiff didn't meet their burden to show there was a defect at the time of sale. Therefore, the cause of the injury, what made the machine unsafe and caused plaintiff's injury, was the alteration done by the third party in 2013. And I may be confused. I mean, as I looked at it, there's a negligence kind of claim. There's the Overton Industries analysis that would be identical to that. And so we don't need to worry much about negligence and say the Overton analysis actually is applicable. But on the duty to warn, you have the duty to warn on a latent defect, right? Is that where we're at? That's correct. And so you're saying they can't prove the latent defect, then we don't have to worry at all about the fact that there was no analysis done? I think that's the best I can do. And that it wasn't the direct cause of a plaintiff's injury. The injury was directly caused by the alteration done 20 years later. Right. The best I can do at this point is submit that plaintiff can't meet those elements based on those findings of the court. Right. And so, but it's indisputable that those, that analysis was never done by the trial court. And I am certain beyond any reasonable doubt that the, that Mr. Farkas will argue that the Overton analysis is not sufficient. And what would, and since you won't get a chance to respond to those arguments when he gets up here to rebut, anything you want to say about that? It's an interesting question. Anticipating what he might say? Sure. Judge, instead of, instead of getting into an argument that I didn't brief, what I would, what I would suggest to you with regard to the negligence claim is quite simple. Number one, this defect, or excuse me, the conduct of addition, which was supposedly not putting an adequate guard on the machine, is not what was the approximate cause of plaintiff's injury, was the alteration of the machine 12 years, 20 years down the line of putting a defective guard on the machine. That's how it handled negligence. And so you would ignore entirely the question whether there was defective originally and say now the question really is causation. You can't get there because as a result of the modification causation. Judge, I would, that's correct. I would also submit to you, Judge, there's a question of duty at that point. The question of duty, the counsel states that ANSI and OSHA requirements can't be used. Well, they can't be used according to Murphy, and I think it's Murphy, but they can't be used against the strict liability claims, but they can certainly be used when it comes to duty in the negligence claim. All right? So what those ANSI and OSHA requirements say is that the duty to guard goes upon the user. So that's how I would handle the negligence claims, Your Honor. Thank you. In my remaining minutes here, I just would like to differentiate a little bit some of the cases the plaintiff has cited that he says are right on point. The first one is Moore v. Ford Motor. In that case, actually, I take that back, Judge. I apologize. The company, this is a case the plaintiff said is right on. It is a salt spreader. Right on what issue? Right issue on the strict liability claim. Okay. This is an issue where a gentleman was actually killed when his coat became attached to a salt spreader. The difference here, and I can't emphasize this enough, and it goes back to my first point. The difference here, in that case, and it was Dr. Blundell again, in that case, Dr. Blundell made a specific finding that the product was defective. In our case, he cannot do that. He doesn't know what the components parts were on this product when it was sold. As a result, he can't say whether it was defective or not. What about the argument that you can say it's defective because it was reasonably foreseeable that the machine might be used to accommodate pipes of different sizes, which would have required alteration of the guarding? The argument that, excuse me, response to that argument, Judge, is that that would require material alteration. At that point, the material alteration changes tooling, changes the type of product that you're making, changes the type of product that you have to put in it. All kinds of changes have to be made. My argument would be to that point, at that point, even though it's foreseeable, when that material alteration was made, it became unsafe. That was the responsibility of the third party. Your Honors, I have one minute left. I've pretty much concluded my arguments. I just wanted to... You're not under any obligation to run out the clock. It's not basketball. That's why I'm asking, Judge. Okay, if there are no further questions, I'll yield the rest... Actually, I will say this. Appellee addition requests the Court affirm the District Court's judgment in favor of addition and against Timothy Farkas. And I yield the rest of my time. Thank you, Your Honor. Thank you, Mr. Claxon. Mr. McPhail, your rebuttal. May it please the Court. Judge Erickson, if I could just please briefly address your argument about Overton. Overton was dismissed on a negligence claim because they are a component manufacturer. There's law directly on point to that issue, not because of the original design of the machine. Your Honor, we are conflating the elements of strict liability. Conflating two. One is unreasonably dangerous, and the second one is at the time of the sale. So Dr. Blundell knows that this machine did not have two-hand control and did not have a light curtain. He knows that, and it's undisputed from the defense that both of those conditions existed at the time of the sale. So I don't know why we're talking about this. He doesn't know what guard, whatever guard was, because it's irrelevant. But is there a proximate cause issue with that theory? Dating back that far? No, Your Honor. Eleven separate witnesses testified unequivocally if this machine was designed in the way that Dr. Blundell says it should have been designed. There is no way this accident could have ever happened. So all we're talking about here is a question of fact on causation at that point. They're pointing the blame on, well, they didn't guard it correctly. It's somebody else's fault that they didn't guard it. But folks, this is undisputed. There was no guard at any time on this machine for the configuration that was being used at the time of the accident. In fact, I'm going to quote from you the corporate rep, Lonnie Magruder. This is in the joint appendix, page 170. And the quote is, the guard that was given at the time of the sale is no longer appropriate or adequate as soon as the configuration changes, as soon as the tooling changes. But that's because the device has been modified. In a reasonably foreseeable manner as the expert for the defense admits. The expert for the defense on record says that the machine was being used in a reasonably foreseeable manner. So on these facts, we deal with the reasonably foreseeable issue here. Is that your point? Your Honor, I see I'm out of time. May I answer your question? Yes, you may. Okay. I don't think that there's any issue that's undisputed in the case. Every single issue there is evidence to. It's all in the record, Your Honor. But if you're talking about reasonably foreseeable, Your Honor, it is undisputed. The, Alex, yes, Alex Rigoni, who is the expert for addition, testified in his deposition that the use at the time of sale, this is in addendum 32, Your Honor, the use at the time of the injury was reasonably anticipated. This was within the design parameters of the machine and the manufacturer has to make it safe for all reasonably anticipated uses. That's the entire point of Dr. Blutendell's opinion. Located, what, what 22? The addendum at page 32, Alex Rigoni testifying that the use at the time of sale was reasonably anticipated and within the design parameters of the machine. Thank you, Your Honors. If I may, I'll step down now. Thank you, Mr. McPhail. Thanks both counsel for the argument you provided to the court. You've been helpful. We will wrestle with the issues as best we can and render decision in due course. Thank you.